UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RANDY SHIELDS, on behalf of himself, and as a representative of similarly situated persons, <br><br> Plaintiff, <br><br> v. <br><br> FRED MEYER STORES INC., <br><br> Defendant. | No. 2:23-cv-01455-TL <br><br> FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND IMPOSITION OF CONSTRUCTIVE TRUST <br><br> JURY TRIAL DEMANDED |

Plaintiff Randy Shields ("Plaintiff"), individually and as class representative for classes

of similarly situated persons, brings this putative class action against Defendant Fred Meyer

Stores Inc. ("Fred Meyer" or "Defendant") for conversion, breach of contract, unjust enrichment,

violations of the Washington Consumer Protection Act ("WCPA"), and imposition of a

constructive trust, as set forth herein.

## I. VENUE, JURISDICTION AND PARTIES

1.1     Plaintiff Randy Shields is a married man who resides in King County,

Washington.

1.2     Defendant Fred Meyer is a foreign corporation licensed and registered to do

Berry&Beckett
PLLP
1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

business in Washington State as a foreign profit corporation, which does business in King County, Washington State.

1.3     On August 9, 2023, Plaintiff filed this action in King County, Washington, Superior Court. Venue and personal jurisdiction were proper in the King County Superior Court because Fred Meyer does business in King County, Washington, and the actions that are alleged herein occurred in King County, Washington.

1.4     On September 15, 2023, Defendant removed this action to this Court pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453. Jurisdiction is proper in this Court pursuant thereto.

## II.  FACTS

2.1     Beginning in December 2018, Plaintiff has received federal social security benefits delivered to him via his Direct Express Debit Mastercard (the "debit card"). Each social security payment which Plaintiff has received has been loaded directly onto the debit card. The card was and is issued by Comerica Bank and the program is operated by Conduent Business Services, LLC. Members of the putative classes similarly receive federal social security benefits delivered to them via their Direct Express Debit Mastercards, which are similarly loaded directly onto their debit cards.

2.2     Plaintiff frequently uses the debit card to purchase gasoline at Fred Meyer, Fuel Outlet #459, in Renton, Washington. Plaintiff and his wife, Michelle Bell, each have Fred Meyer Rewards accounts, which are linked to one another in Fred Meyer's computer records. In order to obtain Fred Meyer Rewards accounts, Plaintiff and his wife were each required to provide to Fred Meyer their names, address, and telephone numbers. The Rewards accounts enable Fred Meyer to monitor purchases of Plaintiff and his wife at Fred Meyer stores, including by date, items purchased, and amounts paid.



1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

2.3     On several occasions, Plaintiff has prepaid for gasoline at Fred Meyer with his debit card to purchase a specified dollar amount of gasoline. Plaintiff's wife has also prepaid to purchase gasoline at Fred Meyer using Plaintiff's debit card on a few occasions, probably three or fewer times.

2.4     From December 2018 through the present, Plaintiff did not receive monthly statements of his debit card account activity from Direct Express, Comerica Bank, or Conduent Business Services, LLC. Until 2023, Plaintiff was not aware that statements of his recent—i.e., a few months—debit card activity were available on the Direct Express website. Plaintiff now has obtained statements of his debit card activity for the months December 2018 through October 2021 and December 2021 through December 2022. Plaintiff has requested from Direct Express, but has not yet received, statements for his debit card activity for November 2021 and January 2023 to the present. Based on a review of the debit card statements presently available to Plaintiff, the dates Plaintiff or Plaintiff's wife prepaid to purchase gasoline at Fred Meyer using Plaintiff's debit card, and the amounts they prepaid for gasoline, appear to include the following:

| Date | Amount Prepaid |
|---|---|
| 12/13/2018 | $ 20.00 |
| 02/17/2019 | 70.00 |
| 03/02/2019 | 70.00 |
| 04/03/2019 | 40.00 |
| 07/03/2019 | 30.00 |
| 07/08/2019 | 35.00 |
| 09/03/2019 | 25.00 |
| 10/03/2019 | 40.00 |
| 10/07/2019 | 25.00 |
| 11/04/2019 | 20.00 |
| 12/03/2019 | 30.00 |
| 12/06/2019 | 30.00 |
| 02/03/2020 | 50.00 |
| 02/03/2020 | 50.00 |
| 03/03/2020 | 40.00 |



1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

| | |
|---|---|
| 04/08/2020 | 20.00 |
| 04/30/2020 | 45.00 |
| 06/03/2020 | 40.00 |
| 06/06/2020 | 30.00 |
| 07/02/2020 | 45.00 |
| 12/03/2020 | 25.00 |
| 12/03/2020 | 20.00 |
| 12/31/2020 | 45.00 |
| 01/06/2021 | 60.00 |
| 01/07/2021 | 25.00 |
| 02/03/2021 | 45.00 |
| 03/06/2021 | 20.00 |
| 03/13/2021 | 10.00 |
| 04/02/2021 | 60.00 |
| 04/12/2021 | 35.00 |
| 04/16/2021 | 40.00 |
| 05/05/2021 | 25.00 |
| 06/05/2021 | 25.00 |
| 07/02/2021 | 60.00 |
| 07/02/2021 | 35.00 |
| 08/03/2021 | 60.00 |
| 08/11/2021 | 30.00 |
| 09/06/2021 | 40.00 |
| 10/06/2021 | 30.00 |
| 10/07/2021 | 30.00 |
| 10/12/2021 | 30.00 |
| 11/03/2022 | 75.00 |
| 12/02/2022 | 80.00 |

As explained below in Paragraphs 2.12 and 2.13, the two $50.00 charges on February 3, 2020 are likely incorrect double charges, and the $30.00 charges on December 3, 2019 and December 6, 2019, may be incorrect double charges.

2.5 On several occasions, Plaintiff and/or his wife did not pump as much gasoline as was pre-purchased, because the fuel tank on Plaintiff's vehicle became full before all of the pre-paid gasoline was pumped into it. Beginning in about December 2018, on approximately ten times when he did not pump as much gasoline for which he had prepaid, Mr. Shields informed the Fred Meyer fuel cashier he had not pumped as much gasoline as the amount for which he had



prepaid, and asked the cashier for a refund of the portion of his prepayment for the gasoline he

had not pumped. On each of these occasions, the fuel cashier informed Mr. Shields that the value

of the unpumped gasoline would automatically be refunded to his debit card within five business

days. Based on, and in reliance on, the fuel cashiers' assurances, Plaintiff believed that when he

prepaid for more gasoline than he pumped, Plaintiff would receive a credit back to his debit card

for the value of the prepaid gasoline that was not pumped. Based on, and in reliance on, the fuel

cashiers' assurances that he would automatically receive a refund to his debit card for the value

of the unpumped gasoline for which he had prepaid, after approximately March 2020 Plaintiff

rarely informed the Fred Meyer cashier when he did not pump as much gasoline as the amount

for which he had prepaid.

       2.6     Plaintiff and his wife did not only use the debit card to pay for gasoline at Fred

Meyer Store #459. For example, between December 7, 2021 and October 14, 2022, Plaintiff and

his wife prepaid for gasoline at Fred Meyer Store #459 thirty-two times using their Visa debit

card issued by MetaBank. Plaintiff prepaid for the gasoline and pumped the gasoline the

significant majority of those thirty-two purchases. Of those thirty-two purchases, Plaintiff and his

wife received refunds credited back to their MetaBank Visa card for the value of the prepaid

gasoline that was not pumped sixteen times. Of those sixteen purchases for which refunds were

credited back to their MetaBank Visa card, Plaintiff or his wife informed the fuel cashier no

more than two times they had pumped less gas than the amount for which they had prepaid and

therefore needed a refund. This is consistent with Plaintiff's reliance on the Fred Meyers' fuel

cashiers' assurances that the value of the unpaid gasoline for which they had prepaid but did not

pump, when paying with the Direct Express debit card, would automatically be refunded directly

to the debit card.



1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

2.7     On November 3, 2022, Mr. Shields prepaid with his debit card for $75.00 worth of gasoline at Fred Meyer Fuel Outlet #459 and only pumped approximately $43.00 worth of gasoline. Mr. Shields believed he would receive the difference between the amount of gasoline for which he prepaid and the amount he pumped, $32.00, as a credit back to his debit card account within five business days, as he had been assured numerous times by the fuel cashiers. At the time, Mr. Shields was low on funds and had other pending expenses, so he called the Direct Express Customer Service telephone line daily for the next several days to inquire whether the refund from Fred Meyer had been posted to his debit card account. After several days, the expected refund from Fred Meyer had still not been posted to Mr. Shields' debit card account. On November 10, 2022, the fifth business day following the gasoline purchase transaction, Mr. Shields spoke to a Fred Meyer Manager or Customer Service representative at Store #459 named "Kevin." about the missing refund. Mr. Shields does not remember Kevin's last name. Kevin acknowledged that Mr. Shields' debit card account had not been credited back for the value of the unpumped gasoline and informed Mr. Shields that he was not the only customer for whom Fred Meyer had not credited back the value of unpumped gasoline to his debit card account. Kevin told Mr. Shields that Store #459 had received many complaints by customers who had not received proper refunds to their debit cards after having prepaid for gasoline and who had not pumped all the gasoline for which they had prepaid. Kevin had a store cashier reimburse Mr. Shields at that time for the unpumped gasoline for which Mr. Shields had prepaid on November 3, 2022, but which had not been pumped, the sum of $32.00.

2.8     Following his November 10, 2022 interaction with Kevin, Mr. Shields requested his previous debit card statements from Direct Express. After his receipt and review of the statements, Mr. Shields discovered that although he had received five refunds in 2019 and one on



Berry&Beckett
1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

March 3, 2020 for prepaid gasoline which he had not pumped, he had received no refunds for unpumped gasoline at Fred Meyer after March 3, 2020, and he knew there had been several occasions following that date when he had not pumped all of the gasoline for which he had prepaid, for which he was entitled to refunds.

2.9     Following this discovery, Mr. Shields went to Fred Meyer Store #459 to discuss the missing refunds, and took his Direct Express account statements with him. He initially spoke to a Customer Service representative named Whitney Emery. Ms. Emery confirmed to Mr. Shields that Store #459 had received complaints from many customers who had not received refunds to their own debit cards for unpumped gasoline after having prepaid for more than they had pumped. Ms. Emery referred Mr. Shields to a Fred Meyer Senior Manager, Brian Lovall, to whom Mr. Shields spoke.

2.10    In his conversation with Mr. Lovall, Mr. Lovall also told Mr. Shields that Store #459 had received complaints from many customers who had not received refunds to their own debit cards for unpumped gasoline after having prepaid for more than they had pumped. Mr. Lovall told Mr. Shields that the issue seemed to be a problem only with Direct Express debit cards. Mr. Lovall reviewed Mr. Shields' account statements and informed Mr. Shields that he could see there were additional instances where Mr. Shields had not received refunds which he should have received from Fred Meyer for prepaid gasoline that had not been pumped, for which Mr. Shields had not received refunds. Mr. Lovall told Mr. Shields that he could refund Mr. Shields for two transactions for which Mr. Shields was entitled to receive refunds, but could not give Mr. Shields refunds for other prior transactions for which Mr. Shields had been entitled to receive refunds for gasoline purchases. Mr. Lovall told Mr. Shields that Fred Meyer store policy prevented him from providing those refunds because they had occurred too far in the past. Mr.



Berry&Beckett
PLLP

1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

Shields requested that Fred Meyer refund him for all gasoline purchase transactions for which he had not received refunds, and did not agree to accept refunds only for the two transactions for which Mr. Lovall had offered him refunds.

2.11    During the meeting between Mr. Lovall and Mr. Shields, Mr. Lovall reviewed data in a store computer. Mr. Lovall told Mr. Shields that the data showed that Fred Meyer had tried to send refunds to Mr. Shields' debit card account but that Direct Express had refused the refunds. Mr. Shields asked Mr. Lovall why Fred Meyer had not contacted him to inform him that Direct Express had refused the refunds and to let him know that Fred Meyer was holding his money. Mr. Lovall stated that Fred Meyer had no means to contact customers who were owed refunds, to which Mr. Shields pointed out that Fred Meyer had his address and telephone information in its data base, that Fred Meyer sends him and his wife coupons based on their purchase history, and that Fred Meyer could have called or written him to inform him about the refunds that had not been made. Mr. Lovall had no response to those points, other than to tell Mr. Shields that he was unable to provide him any relief other than to reimburse him for the two transactions for which he had already offered to reimburse him, and that if Mr. Shields was not satisfied with that relief, he should sue Fred Meyer.

2.12    Following his meeting with Mr. Lovall, Mr. Shields spoke to another Fred Meyer Customer Service representative at Store #459, "Netta," and showed her his Direct Express debit card account statements. Netta informed Mr. Shields that it appeared he had been double-charged for a $50.00 gasoline purchase transaction on February 3, 2020, but that date was too far in the past to allow her to refund the extra charge to Mr. Shields, pursuant to the same Fred Meyer policy to which Mr. Lovall had referred.

2.13    Mr. Shields pursued these issues further. He was able to obtain a meeting on



January 6, 2023 between Store #459 Manager James Dixon, Mr. Lovall, and himself. In that meeting, Mr. Dixon also confirmed that Store #459 had received complaints from many customers who had not received refunds to their own debit cards for unpumped gasoline after having prepaid for more than they had pumped. During the meeting, Mr. Dixon reviewed Mr. Shields' account statements and told him that it appeared that Mr. Shields had also been double-charged for a gasoline purchase on December 3, 2019, with the additional charge appearing on Mr. Shields' statement as a $30.00 charge on December 6, 2019. Mr. Shields requested reimbursement of this double charge, but Mr. Stovall told Mr. Shields that, pursuant to Fred Meyer policy, he could not refund the charge because it had occurred too far in the past. Mr. Dixon and Mr. Stovall again confirmed to Mr. Shields that, in addition to the double charges, Mr. Shields had not received refunds for gasoline purchases he had made, where he had not pumped all of the gasoline for which he had paid, but due to the age of the transactions, they could not give him refunds for those transactions pursuant to Fred Meyer policy. Mr. Shields again requested that Fred Meyer provide him the proper refunds for all transactions for which he had been, and was, owed money for gasoline purchases, but Mr. Dixon and Mr. Stovall told him that they could only give him refunds for the two transactions previously noted by Mr. Stovall, in accordance with Fred Meyer policy. Mr. Shields received a cash refund of $57.96 from Fred Meyer for those two transactions at the conclusion of his meeting with Mr. Dixon and Mr. Stovall, under protest. Mr. Shields continued to request that Fred Meyer refund him all of the money which he should have received as refunds when the transactions occurred, but Mr. Dixon and Mr. Stovall both told Mr. Shields that if he wished to pursue the matter further, he should sue Fred Meyer.

2.14 After Mr. Shields' meeting with Mr. Dixon and Mr. Stovall, while at Store #459



1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

Mr. Shields saw and spoke to "Kevin," the Manager or Customer Service Representative referred to previously in Paragraph 2.7 above. Mr. Shields told Kevin that he was dissatisfied with Fred Meyer's refusal of his request to receive the refunds to which he had been and remained entitled to receive, and that he believed Fred Meyer owed him that money. Kevin provided Mr. Shields a telephone number for someone in authority at Fred Meyer's headquarters. Mr. Shields later called that number and spoke to a Fred Meyer representative named "Nep." Nep told Mr. Shields that his complaints about Fred Meyer's refusal to refund his money were the subject of a "Case Number," Number 534-65023. In that conversation, Mr. Shields again requested that Fred Meyer refund the money which he was entitled to receive, for the double charges and for the differences in the amounts he had prepaid for gasoline and the value of the gasoline he had pumped, for which Fred Meyer had not previously reimbursed him. While Nep confirmed for Fred Meyer that Mr. Shields had been entitled to receive refunds which he had not received, she told Mr. Shields that pursuant to Fred Meyer policy Fred Meyer would not refund money to Mr. Shields for those improper transactions because they had occurred too far in the past.

2.15    Mr. Shields requested both or either Mr. Lovall and/or Mr. Dixon to provide him records of the transactions for which Mr. Shields prepaid for gasoline with his debit card for which he did not receive credit back to the debit card account or reimbursement for unpumped gasoline or incorrect duplicate charges. Mr. Lovall and/or Mr. Dixon told Mr. Shields he/they could not provide him those records, or a summary of those records.

### III. FIRST CLASS ACTION CAUSE OF ACTION: CONVERSION

3.1    Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

3.2    Fred Meyer knew that Mr. Shields and members of the putative classes were entitled to refunds for the differences between the amounts for which they had prepaid for

FIRST AMENDED CLASS ACTION
COMPLAINT FOR DAMAGES AND
IMPOSITION OF CONSTRUCTIVE TRUST - 10
(No. 2:23-cv-01455-TL)

Berry&Beckett
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

gasoline and the value of the gasoline that they had pumped when those amounts were different, and Fred Meyer knew that refunds that Mr. Shields and members of the putative classes were entitled to receive for those differences had sometimes not been made because it unsuccessfully attempted to refund those funds to Mr. Shields' and members of the putative classes' debit accounts. Fred Meyer made no other efforts to refund Mr. Shields' or members of the putative classes' money to them and instead wrongfully kept the money and refused to refund it to Mr. Shields.

3.3     Even if Fred Meyer did not realize that the refunds of Mr. Shields' and members of the putative classes' money had been refused by Direct Express when it originally attempted to make them, or that the refunds had not been attempted by Fred Meyer, Fred Meyer knew it had wrongfully retained and was continuing to wrongfully retain Mr. Shields' and members of the putative classes' money no later than the dates of the meeting between Mr. Shields and Mr. Lovall referred to in Paragraphs 2.10 and 2.11, which was sometime between November 10, 2022, and January 6, 2023, when Mr. Lovall reviewed Mr. Shields' account statements and his gasoline purchase data on Fred Meyer's computer system.

3.4     Fred Meyer knew that Mr. Shields and members of the putative classes were entitled to refunds for the double charges on their debit accounts no later than sometime between the dates of the meeting between Mr. Shields and Mr. Lovall referred to in Paragraphs 2.10 and 2.11, which was sometime between November 10, 2022, and January 6, 2023, when Fred Meyer representatives reviewed Mr. Shields' account statements and his gasoline purchase data on Fred Meyer's computer system. Instead of refunding the double charges to Mr. Shields and members of the putative classes, Fred Meyer wrongfully kept the money and refused to refund it to Mr. Shields.



1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

3.5     Fred Meyer had an obligation to Mr. Shields and members of the putative classes to return the money to Mr. Shields and members of the putative classes that they had been double charged, and for the differences between the amounts they had prepaid for gasoline and the value of the gasoline they pumped. Mr. Shields and members of the putative classes have been deprived of the possession of the money that should have been refunded by Fred Meyer, without lawful justification.

3.6     Mr. Shields did not discover that Fred Meyer had wrongfully retained his money for the refunds he was owed for the differences between the amounts he had prepaid for gasoline and the value of the gasoline he had pumped until he received his debit card account statements from Direct Express and met with Mr. Lovall and Mr. Dixon sometime between November 10, 2022 and January 6, 2023.

3.7     By retaining amounts for gasoline for which Mr. Shields and members of the putative classes prepaid but had not pumped, and by retaining amounts for gasoline for which Mr. Shields and members of the putative classes had been incorrectly double-charged, Fred Meyer converted Mr. Shields' and putative class members' money, which has damaged Mr. Shields and members of the putative classes in amounts to be proven at trial.

## IV.  SECOND CLASS ACTION CAUSE OF ACTION: BREACH OF CONTRACT

4.1     Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

4.2     Each time Mr. Shields and members of the putative classes patronized a Fred Meyer fuel station, Fred Meyer disclosed how much it would charge its fuel customers for the gasoline they purchased, usually if not always expressed in "per gallon" dollar terms. These price disclosures occurred on large signs visible to the public at large, and on the actual fuel pumps that customers used to pump gasoline.



1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

4.3    By prepaying for and pumping gasoline at Fred Meyer on each and every occasion Mr. Shields and members of the putative classes did so, they were agreeing to purchase gasoline at the amount for which Fred Meyer represented it would sell it. Therefore, by prepaying for and pumping gasoline at Fred Meyer on each and every occasion Mr. Shields and members of the putative classes did so, Mr. Shields and members of the putative classes entered into a contract with Fred Meyer to purchase gasoline at the per gallon price advertised by Fred Meyer.

4.4    When Mr. Shields and members of the putative classes pumped less gasoline than the amount for which they had prepaid without receiving a refund for the unpumped gasoline, Mr. Shields and member of the putative classes were paying Fred Meyer more per gallon than its advertised price, more money per gallon than the amount for which Fred Meyer had agreed to sell it to them, and more than they had agreed to pay for it. This constituted a breach of contract by Fred Meyer of its agreement to sell gasoline to Mr. Shields and members of the putative classes, for which Mr. Shields and members of the putative classes are entitled to recover judgment in an amount to be determined at trial.

## V.  THIRD CLASS ACTION CAUSE OF ACTION: UNJUST ENRICHMENT

5.1    Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

5.2    By prepaying for gasoline in amounts greater than the value of the gasoline Mr. Shields and members of the putative classes received in exchange for those payments, Mr. Shields and members of the putative classes conferred benefits upon Fred Meyer. Fred Meyer knew of the benefits Mr. Shields and the putative classes had conferred upon it, as explained above in Paragraphs 3.2 through 3.4. The acceptance and retention of the funds by Fred Meyer that it should have refunded to Mr. Shields and the putative classes would be inequitable without

Berry&Beckett
1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

payment of the value of the refunds it has retained.

5.3     Accordingly, Fred Meyer has been unjustly enriched by its retention of the value of Mr. Shields' and the putative class members' unpumped gasoline and double charges for gasoline purchases, to Mr. Shields' and the putative class members' detriment. Mr. Shields and the putative classes are entitled to recover money damages against Fred Meyer for such unjust enrichment, in an amount to be proven at trial.

## VI.  FOURTH CLASS ACTION CAUSE OF ACTION:  VIOLATIONS OF WASHINGTON'S CONSUMER PROTECTION ACT ("WCPA")

6.1     Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

6.2     To prove a violation of the Washington Consumer Protection Act ("WCPA"), a plaintiff must show that the defendant (1) committed an unfair or deceptive act (2) in trade or commerce (3) which affects the public interest and which (4) proximately resulted in (5) injury to the proponent's business or property. Fred Meyer committed violations of the WCPA by retaining funds it received from Mr. Shields and members of the putative classes in exchange for gasoline purchases, that it should have refunded to them.

6.3     An act may be considered unfair and a violation of the Washington Consumer Protection Act ("WCPA") if the act or practice is in violation of public interest. This can include considering whether the practice, without necessarily having been considered unlawful, offends public policy as it has been established by statutes, the common law or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, other established concept of unfairness. Other factors which may be considered in determining whether a specified act is "unfair" include whether it is immoral, unethical, oppressive, or unscrupulous, and/or whether it causes substantial injury to consumers. Further, a practice is "unfair" if it causes or is



likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits. If consumers do not have a free and informed choice that would have enabled them to avoid the unfair practice, the injury was not reasonably avoidable.

6.4 Fred Meyer's practice of knowingly retaining money it receives from its customers for gasoline prepayments or for double charges is in violation of the public interest. It offends public policy, and constitutes unlawful theft, as defined by Washington statutes. It also offends public policy as it has been established by established notions of unfairness. It further is immoral, unethical, oppressive, and unscrupulous, and causes substantial injury to its customers which is not reasonably avoidable to consumers, because consumers have no reason to have known or know that Fred Meyer made and makes no effort to refund the money to the customers after either not attempting to refund the money in the first place, or after it was unsuccessful in the first effort to refund the money. Further, there are no countervailing benefits to Fred Meyer's customers resulting from Fred Meyer's retention of its customers' money that should have been refunded to them.

6.5 Accordingly, Fred Meyers' failure to refund its customers' money for the differences between the amounts they prepay for gasoline and the value of the gasoline they pump and for the double charges it assesses against its customers' Direct Express debit card accounts, and its retention of the money instead, is an unfair act or practice for purposes of the WCPA.

6.6 Although the term "deceptive" is not defined in the WCPA, the implicit understanding of the term is that the actor misrepresented something of material importance. A



1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

1

plaintiff need not prove the act in question was intended to deceive, only that it had the capacity

2

to deceive a substantial portion of the public.

3

6.7     Fred Meyer's fuel cashiers informed Mr. Shields and members of the putative

4

classes with Direct Express debit card accounts that the differences between the amounts they

5

prepaid for gasoline and the value of the gasoline they pumped would be automatically refunded

6

by crediting their debit card accounts for those differences. This was a misrepresentation of

7

material importance and had the capacity to deceive a substantial portion of the public.

8

Accordingly, Fred Meyers' failure to refund its customers' money for the differences between

9

the amounts they prepay for gasoline and the value of the gasoline they pump, and its retention

10

of the money instead, is a deceptive act or practice for purposes of the WCPA.

11

6.8     For purposes of the WCPA, "trade and 'commerce" includes the sale of assets or

12

services, and any commerce directly or indirectly affecting the people of the state of Washington.

13

Fred Meyer's retention of the amounts that should have been refunded to Mr. Shields and

14

members of the putative classes occurred in Washington state, and occurred during and as a

15

result of Fred Meyer's sale of assets—i.e., gasoline—to Washington citizens and residents.

16

Accordingly, Fred Meyer's retention of the money it should have refunded to Mr. Shields and

17

members of the putative classes occurred in trade or commerce for purposes of the WCPA.

18

6.9     The public interest element required for a WCPA claim is met where the

19

defendant's actions injured other persons, had the capacity to injure other persons, or has the

20

capacity to injure other persons. Fred Meyer's retention of money it should have refunded to Mr.

21

Shields and members of the putative classes injured Mr. Shields and other persons because they

22

were deprived of the money they should have been refunded. Fred Meyer's retention of money it

23

should refund to persons who are double charged for gasoline and who prepay for gasoline but

24

25

26

FIRST AMENDED CLASS ACTION
COMPLAINT FOR DAMAGES AND
IMPOSITION OF CONSTRUCTIVE TRUST - 16
(No. 2:23-cv-01455-TL)



1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

who do not pump all of the gasoline for which they have prepaid also has the capacity to injure other persons who purchase gasoline from Fred Meyer, because those persons will be deprived of money they are entitled to receive from Fred Meyer if they are overcharged or do not receive refunds for the value of the gasoline for which they have prepaid but do not pump. Accordingly, Fred Meyer's failure to refund money to Mr. Shields and members of the putative class whom it double-charged for gasoline, and who prepaid for more gasoline than they pumped, meets the public interest element required for a WCPA claim.

6.10     To establish injury for a WCPA claim, one need only show that the unfair or deceptive act or practice caused injury to the plaintiff's business or property. The requirement is met upon proof that the proponent's property or money interest is diminished because of the unlawful conduct.

6.11     Mr. Shields and members of the putative classes were injured by Fred Meyer's failure to refund them money they were entitled to receive from their prepayments for gasoline and for double charges for their gasoline purchases because it deprived them of the money they were entitled to receive through those refunds. Even when funds were refunded to Mr. Shields and members of the putative classes after the prepayments were made to Fred Meyer, unless the refunds were made contemporaneously with the prepayments or double charges, Mr. Shields and members of the putative classes were injured because they were deprived of the use of the funds between the times of the prepayments or double charges, and when the refunds actually occurred. Accordingly, Mr. Shields and members of the putative classes suffered injury for purposes of the WCPA.

6.12     Plaintiffs prove causation for purposes of a WCPA claim when they show that but for the defendant's unfair or deceptive practice, they would not have suffered an injury. Fred



1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

Meyer's acts and practices in failing to refund money it received for gasoline sales to its customers proximately caused the injuries sustained by Mr. Shields and members of the putative classes described herein because had Fred Meyer refunded the money to Mr. Shields and members of the putative classes instead of keeping it, Mr. Shields and members of the putative classes would not have suffered the injuries they suffered, as described in Paragraph 6.11 above.

6.13    Mr. Shields and each member of the putative classes are entitled to recover and should recover against Fred Meyer actual damages in an amount to be proven at trial, statutory penalties and reasonable attorney's fees and costs, together with prejudgment interest at the highest allowable rate on the amounts retained by Fred Meyer that properly should have been credited back to the debit card accounts of Mr. Shields and putative class members, all pursuant to RCW 19.86.090. In addition, Mr. Shields and each member of the putative classes should receive treble damages against Fred Meyer, up to a limit of $25,000, pursuant to RCW 19.86.090.

## VII.  SEVENTH CLASS ACTION CAUSE OF ACTION: IMPOSITION OF CONSTRUCTIVE TRUST

7.1    Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

7.2    Fred Meyer obtained and retains the money it obtained from, and should have refunded to, Mr. Shields and members of the putative class, by unjust or unconscionable means. The money that Fred Meyer continues to retain that should have been refunded to Mr. Shields and the putative classes justifiably belongs to Mr. Shields and members of the putative classes. The Court should impose a constructive trust on the money Fred Meyer should have refunded to Mr. Shields and members of the putative classes that it unjustly still retains, and should order



Berry&Beckett
1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

1  Fred Meyer to deliver and convey said funds to their rightful owners, together with prejudgment

2  interest on such sums at the highest allowable rate.

3  ## VIII.  CLASS ACTION ALLEGATIONS

4      8.1    Plaintiff realleges the foregoing paragraphs as if fully stated herein.

5      8.2    Pursuant to Civil Rule 23(a) and (b)(3), Plaintiff brings this action on behalf of

6  the following classes against Defendant Fred Meyer:

7

8          **Class #1: Uncredited prepaid and unpumped gasoline Class.**
   All persons who, in the four-year period preceding the filing of this
   action to the present, prepaid for gasoline at a Fred Meyer retail

9          fuel outlet, who did not pump the entire value of the prepaid
   gasoline purchased and who did not receive a credit back to the

10          debit card accounts used to purchase the gasoline or who did not
   otherwise receive reimbursement for the value of the unpumped

11          prepaid gasoline.

12          **Class #2: Double-charged Class:** All persons who, in the four-
   year period preceding the filing of this action to the present,

13          purchased gasoline at a Fred Meyer retail fuel outlet, who were
   double-charged for the gasoline purchased, and who did not

14          receive a credit back to the debit card accounts used to purchase
   the gasoline or who did not otherwise receive reimbursement for

15          the value of the double charges.

16      8.3    **Numerosity.**  The members of the putative classes are so numerous that joinder

17  of all members is impracticable. Upon information and belief, the number of members of the

18  putative classes exceeds 40.

19

20      8.4    **Common Questions of Law and Fact**.  The questions of law and fact are the

21  same for Plaintiff and for all members of the putative classes, including whether the conduct of

22  Fred Meyer in retaining amounts it should have credited back to Plaintiff's and putative class

23  members' debit card accounts or otherwise not reimbursing amounts that Plaintiff and members

24  of the putative class members had prepaid for gasoline but had not pumped constituted

25  conversion and violations of the WCPA, constitutes breach of contract or unjust enrichment, and

26


Berry&Beckett
1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

whether a constructive trust should be imposed on Fred Meyer and whether Fred Meyer should be ordered to deliver said funds to Plaintiff and members of the putative class, such that those issues dominate any issues that affect only individual members.

       8.5    **The Plaintiff's Claims Are Typical of the Classes.** Plaintiff's claims are typical of the claims of the putative classes in that they arise from Defendant Fred Meyer's retention of Plaintiff's and members of the putative classes' money paid for unpumped gasoline at Defendant's retail gasoline facilities, and/or from Fred Meyer's double-charging of amounts Plaintiff and members of the putative class paid for gasoline purchases.

       8.6.    **The Plaintiff Will Fairly and Adequately Protect the Class**. Plaintiff will adequately represent and protect the interests of the putative Class because he has retained competent and experienced counsel and his interest in the litigation is not antagonistic to the other members of the putative classes.

       8.7.    **A Class Action is Maintainable Under Civil Rule 23(b)(3).** The questions of law and fact common to all members of the putative classes predominate over questions affecting only individual members of the classes, because all members of the putative classes have been subjected to Defendant Fred Meyer's unlawful conduct. The prosecution of separate actions by individual members of the putative classes against Defendant Fred Meyer would create the risk of inconsistent or varying adjudications and incompatible standards of treatment. On information and belief, there are no other pending class actions against Defendant Fred Meyer concerning the issues in this action. A class action is superior to any other available means for the adjudication of this controversy. This action will cause an orderly and expeditious administration of the putative class members' claims; economies of time, effort and expense will be fostered; and uniformity of decisions will be ensured at the lowest cost and with the least expenditure of



1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

judicial resources.

WHEREFORE, Plaintiff prays for the following relief:

1.     For an Order certifying the putative classes identified herein in Paragraph 8.2 under CR 23(b)(3), with Plaintiff as the Class Representative and the undersigned legal counsel as Class Counsel.

2.     For Judgment declaring that Defendant Fred Meyer's conduct in retaining the value of Plaintiff's and putative class members' prepaid but unpumped gasoline and double-charges for prepaid gasoline sales violates the WCPA and is unlawful.

3.     For Judgment for money damages for Plaintiff and members of the putative class for all sums retained by Defendant Fred Meyer for uncredited or unreimbursed amounts prepaid by Plaintiff and members of the putative classes for gasoline that was not pumped, and for which Plaintiff and members of the putative classes were double-charged in amounts to be proven at trial, but in no event less than $10,001.00 in the aggregate.

4.     For treble damages for all sums awarded to Plaintiff and putative class members, up to the statutory maximum of $25,000 per person, pursuant to RCW 19.86.090.

5.     For imposition of a constructive trust on the sums that Fred Meyer retained from the money Plaintiff and members of the putative classes paid for gasoline they did not receive, and for an order requiring Fred Meyer to convey and deliver said sums to Plaintiff and members of the constructive trust, in amounts proportional to the amounts they paid Fred Meyer but for which they did not receive a refund.

6.     For prejudgment interest at the highest allowable rate on all sums awarded to Plaintiff and putative class members for liquidated damage amounts, until the date of entry of

Berry&Beckett
PLLP
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

Judgment herein, and on any sums the Court orders are the subject of a constructive trust for the benefit of Plaintiff and members of the putative classes.

7.    For an award of Plaintiff's and putative class members' costs, expenses, and reasonable attorney's fees pursuant to RCW 19.86.090.

8.    For post-judgment interest at the highest allowable rate on all money damage sums awarded to Plaintiff and members of the putative classes, and on any sums the Court orders are the subject of a constructive trust for the benefit of Plaintiff and members of the putative classes.

9.    For leave to conform his pleadings to the proof presented at trial.

10.   For such other and further relief as the Court deems just and equitable.

DATED: December 13, 2023.

BERRY & BECKETT, PLLP

  _/s/ Guy Beckett_
Guy W. Beckett, WSBA #14939
1708 Bellevue Avenue
Seattle, WA  98122
Telephone: (206) 441-5444
Facsimile:  (206) 838-6346
E-mail:  gbeckett@beckettlaw.com

***Attorneys for Plaintiff***



1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346